SARPY COUNTY PUBLIC EMPLOYEES ASSOCIATION, APPELLANT AND CROSS-APPELLEE, V. COUNTY OF SARPY, APPELLEE; CARL HIBBELER, SARPY COUNTY REGISTER OF DEEDS, ET AL., APPELLEES AND CROSS-APPELLANTS.

370 N.W.2d 495

Filed July 12, 1985. No. 84-238.

Richard J. Dinsmore of Dowd, Fahey, Dinsmore & Hoffman, for appellant.

George C. Rozmarin of Swarr, May, Smith & Andersen, P.C., for appellee Sarpy County.

Allen E. Daubman and Verne Moore, Jr., of McGill, Koley, Parsonage & Lanphier, P.C., for appellees Hibbeler et al.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This is an appeal from an order entered by the Commission of Industrial Relations (CIR) and appears to be a case of first impression. As presented by the parties, the question, first presented to the CIR, is, "Who among the defendants is the employer of the plaintiff's members?" The defendants are the County of Sarpy and the register of deeds, county clerk, county assessor, county treasurer, clerk of the district court, election commissioner, and county surveyor of Sarpy County, Nebraska. The plaintiff is the Sarpy County Public Employees Association, an organization created under the provisions of

Neb. Rev. Stat. §§ 48-801 et seq. (Reissue 1984). Its members are clerical employees of the various Sarpy County offices.

Following a hearing, the CIR concluded that both the county board of Sarpy County, Nebraska, and the individual, elected officials of each of the offices named herein were the collective, joint employers of the employees described in the plaintiff's bargaining unit and, as such, each of the parties must be a part of the bargaining process. The CIR then remanded the matter for further negotiations between the plaintiff organization and the joint employers. All of the parties, dissatisfied with the decision, argue for reversal in this court. We believe that the decision of the CIR, under the facts and law applicable to this case, was in error, and for that reason we must reverse and remand.

The parties argue that the main issue to be decided by this court is who the "employer" is. We believe that the answer to that question is relatively easy, though not dispositive of the issues presented by this case. Section 48-801(4) clearly and unequivocally defines "employer." It provides: "Employer shall mean the State of Nebraska or any political or governmental subdivision of the State of Nebraska . . . ." Under the provisions of § 48-801(4) it is unquestionable that the County of Sarpy is the employer of plaintiff's members, for it is only the county and neither the county board nor the various county officers which is a political or governmental subdivision of the State of Nebraska. Determining, however, that the County of Sarpy is the employer does little, if anything, to solve the question any more than determining that pursuant to § 48-801(4) the State of Nebraska is an employer in its labor negotiations. The more appropriate question is who or what body is authorized to represent the employer. Neither the State of Nebraska nor the County of Sarpy as a subdivision has a voice. If they are to be heard, they must be heard through some body or individual authorized to speak on their behalf. While, as we have noted, the CIR concluded that that voice should be made up of a body consisting jointly of the county board and the various elected officials, we believe, for reasons hereinafter set out, that each publicly elected official, with the exception of the county assessor, is the person authorized to speak on behalf

of the county with regard to those employees working in that public official's individual office.

Both the labor organization and the county argue that only the county board can speak on behalf of the county and therefore, by implication, is the proper body to represent the county in its labor negotiations. In support of their position they argue that when § 48-801(4) is read together with Neb. Rev. Stat. § 23-103 (Reissue 1983), no other conclusion can be reached. The argument has some initial merit and appeal. As we have noted, § 48-801(4) defines an "employer" for purposes of collective bargaining as "any political or governmental subdivision of the State of Nebraska." Neb. Rev. Stat. § 23-101 (Reissue 1983) provides that each county "shall be a body politic and corporate" and thus is a political or governmental subdivision. Under the provisions of § 23-103 "[t]he powers of the county as a body corporate or politic, shall be exercised by a county board . . . ." Furthermore, absent a specific statute to the contrary, it is the county board which enters into contracts for and on behalf of the county. See, *State ex rel. Johnson v. County of Gage*, 154 Neb. 822, 49 N.W.2d 672 (1951); *Speer v. Kratzenstein*, 143 Neb. 300, 9 N.W.2d 306 (1943), *rev'd on other grounds* 143 Neb. 310, 12 N.W.2d 360.

If this was all of the law on the subject, the answer to the question might easily be resolved as both the county and the employees association contend. Unfortunately, such is not the case, and an examination of all of the applicable statutes as well as our previous decisions makes the resolution of this question extremely complex.

In addition to the provisions of §§ 48-801(4) and 23-103, we are further required to consider Neb. Rev. Stat. § 23-1111 (Reissue 1983), which reads as follows: "The county *officers* in *all* counties shall have the necessary clerks and assistants for such periods and at such *salaries* as *they* may determine with the approval of the county board, whose salaries shall be paid out of the general fund of the county." (Emphasis supplied.)

It has long been the recognized rule in this jurisdiction that a county board is without authority, in the absence of a grant, to perform the duties which are part of the official duties of other officials or boards. See *Speer v. Kratzenstein, supra.*

Therefore, unless the county board is specifically given authority to act for and on behalf of the various elected officials, it is without authority to do so. Therein lies the conflict which we must resolve. We believe that an analysis of the various statutes as previously interpreted by this court compels us to resolve the conflict by holding that the authority in this case lies with the various elected officials except as to the county assessor, who is controlled by a specific statute. See Neb. Rev. Stat. § 77-401.01 (Reissue 1981).

Absent the existence of a labor organization as defined by the provisions of § 48-801(6), the statutes make it relatively clear that in most instances the elected officials are authorized in the first instance to hire their own employees, set their salaries, and prescribe their terms and conditions of employment. See § 23-1111. While § 23-1111 speaks only about salary, it seems obvious that the body or official authorized to set the salary has, by necessary implication, the authority to prescribe the manner in which the work must be done in order to entitle the employee to the salary set by the county official. To hold otherwise, in the absence of a specific statute, would permit the employee to set his or her own terms of employment while requiring the elected official to set the salary. Such a result would be untenable.

Although the county board is given the right to approve the salary set by the elected official, the county board may not act arbitrarily or capriciously. In *Meyer v. Colin*, 204 Neb. 96, 102, 281 N.W.2d 737, 741 (1979), we said: "It is clear that section 23-1111, R.R.S. 1943, requiring the approval of salaries by the County Board, does not allow the Board to arbitrarily reduce the salaries recommended by the elected officer." Further, in *Meyer, supra* at 102, 281 N.W.2d at 741, we said: "The question presented is actually distinct from mere budgeting procedures and relates, instead, to the independence and discretion which are to be afforded an elected officer."

We earlier decided a similar case in *Bass v. County of Saline*, 171 Neb. 538, 106 N.W.2d 860 (1960). In the *Bass* case the evidence disclosed that the appellant was the clerk of the county court of Saline County. The county judge informed the county board that he had fixed the salary of the clerk, beginning in

October of 1959, at $225 per month. In October of 1959 the clerk filed her claim for salary in the amount of $225, but the county board allowed the claim only in the amount of $190 in accordance with a salary schedule established by it on July 1, 1959. In explaining the meaning of the phrase "with the approval of the county board," we said at 541, 106 N.W.2d at 863:

> The primary issue here is the meaning to be given to this limitation. The limitation clearly does not mean that the county board could whimsically or arbitrarily ignore the fixing of the salary of the clerk of the county court by the county judge. To so hold would have the effect of investing the county board with full power to fix salaries of employees in county offices contrary to the expressed intent of the Legislature, and render nugatory the provision of section 23-1111, R.R.S. 1943, granting such authority to county officers.

Therefore, absent a specific statute to the contrary, and absent the provisions of §§ 48-801 et seq., elected officials are free to set the salaries and, by implication, the working conditions for their respective employees, subject only to the approval by the county board, which may not act arbitrarily or capriciously.

The question is whether the adoption of § 48-801(4), when read together with § 23-103, repeals by implication the authority granted public officials by § 23-1111. We think not. To begin with, repeal by implication is not favored.

> A statute will not be considered repealed by implication unless the repugnancy between the new provision and the former statute is plain and unavoidable. A construction of a statute which, in effect, repeals another statute, will not be adopted unless such construction is made necessary by the evident intent of the Legislature.

*American Fed. S., C. & M. Emp. v. County of Lancaster*, 200 Neb. 301, 303, 263 N.W.2d 471, 473 (1978). See, also, *City of Grand Island v. County of Hall*, 196 Neb. 282, 242 N.W.2d 858 (1976).

Furthermore, we would be required to hold that § 23-1111 was impliedly repealed only in those counties which have

recognized bargaining units and only in those offices in which the employees are represented. Section 23-1111 would still grant the authority to set salaries to the elected officials where the provisions of §§ 48-801 et seq. did not apply. We do not believe that we can create such a confused situation by implication and only in some cases. Rather, we believe we must employ some basic statutory rules of construction to aid us in finding our way through this legislative jungle.

Section 23-103 was first adopted in 1879 and was in effect when § 23-1111 was adopted in 1943. We must therefore presume that the Legislature knew of the existence of § 23-103 and intended § 23-1111 to be an exception to the general rule. By the same token, when §§ 48-801 et seq. were adopted in 1947, the provisions of § 23-1111 were known to the Legislature. Yet, with that knowledge, the Legislature made no attempt to take away from the elected officials their authority to fix salaries given to them under § 23-1111. We therefore believe that the Legislature intended the specific provisions of § 23-1111 to take precedent over the general provisions of § 23-103. Such a conclusion is not so difficult to reach. See *Bass v. County of Saline, supra.*

All that §§ 48-801 et seq. have done is provide that if the employees elect to organize and have someone speak on their behalf, the county official may not exercise his or her authority under § 23-1111 without first consulting the representatives of the bargaining unit. Should the elected official and the labor organization reach an impasse, the matter is submitted to the CIR for resolution. There is nothing about the adoption of §§ 48-801 et seq. which requires the removal of the elected official from the process of setting salaries and conditions of employment. Absent a bargaining unit, the elected official may act unilaterally, so long as his or her actions are reasonable. Where a bargaining unit exists, the official must act in concert with it. This does not in any manner, however, require the presence of the county board any more than the presence of the Legislature is required when the various agencies of state government engage in labor negotiations with bargaining units, even though the Legislature must ultimately approve the agreement to recognize a bargaining unit or approve a budget

sufficient to pay the wages.

Our attention is called to our earlier decisions in *American Fed. S., C., & M. Emp., AFL-CIO v. County of Lancaster*, 196 Neb. 89, 241 N.W.2d 523 (1976) (*American Fed. I*), and *American Fed. S., C. & M. Emp. v. County of Lancaster*, 200 Neb. 301, 263 N.W.2d 471 (1978) (*American Fed. II*). We do not believe that either case controls the result in the case at bar. We do, however, believe that the language of each case is instructive in our resolution of this matter. In *American Fed. I* we determined that the state Department of Public Welfare and the county division of public welfare were joint employers. In doing so we observed, however, at 95-96, 241 N.W.2d at 526-27:

> It appears that under the state merit system, the state department is empowered to control most of the important facets of labor management relations. The state's involvement in the areas traditionally subject to collective bargaining is apparent. *Since the state and the counties are treated as one unit for personnel management purposes by the statute* and applicable regulations, it follows that the two must be considered a functionally integrated unit for the purpose of collective bargaining with the plaintiff.
>
> . . . .
>
> The state practically controls grievance procedures under the state merit system. Salary matters under the state pay plan are effectively under its control. The employees of county public welfare are paid according to the state merit plan, with funds provided by the state. Section 68-708, R.R.S. 1943, mandates compliance with the state merit system on matters relevant to personnel policies. This includes holidays, sick leave, and other fringe benefits.
>
> To hold on this record that county is the sole employer of the employees concerned is to ignore reality. County actually has no effective control over the areas usually embraced in labor agreements. To force it into bargaining as the sole employer will be either a futile or a disastrous act.

(Emphasis supplied.)

The record in the instant case, however, does not evidence an integrated personnel unit. Although the parties stipulated that at varying times and to varying degrees both the county board and the elected officials made decisions involving personnel, no statute or regulation is directed to our attention such as was involved in *American Fed. I.*

We do not believe that the stipulation entered into in the instant case in any manner discloses that the county board exercises exclusive control over the employment conditions of the employees of the various elected officials, and in view of the language of § 23-1111 and our earlier decisions in *Meyer v. Colin*, 204 Neb. 96, 281 N.W.2d 737 (1979), and *Bass v. County of Saline*, 171 Neb. 538, 106 N.W.2d 860 (1960), it could not. There is therefore no basis to hold that our decision in *American Fed. I* requires us to hold that the county board is a joint employer as ordered by the CIR.

The language found in *American Fed. II* is likewise instructive. In that case we said at 304, 263 N.W.2d at 473: "The effect of the civil service act is to transfer the control of county employees from the various independent county officers to the board of county commissioners." That is to say that if a county such as Lancaster is subject to the civil service act, then the act may prescribe who has ultimate control and can affect who speaks on behalf of the county. But where, as here, Sarpy County is not subject to the civil service act, we must conclude that the transfer which occurs in the presence of the civil service act does not occur in its absence. As we have already indicated, a county is a creature of the Legislature and subject to the direction of the Legislature. Where the civil service act applies, one body may be the voice of the county. Where the civil service act does not apply, others may be the voice of the county. And where, as in the case of the county assessor, the statute specifically provides that the county board shall set the salaries for the employees of the county assessor, see § 77-401.01, a third result may occur. These are all, however, subject to statutory direction.

It is further argued to us that should we find that each elected official is a proper party to speak on behalf of the county with regard to his or her individual employees, great fragmentation

will occur. While we have generally said that fragmentation to the extent it can be avoided should be avoided, see *American Assn. of University Professors v. Board of Regents*, 203 Neb. 628, 279 N.W.2d 621 (1979), and *Sheldon Station Employees Assn. v. Nebraska P.P. Dist.*, 202 Neb. 391, 275 N.W.2d 816 (1979), we have never held and could not hold that artificial units must be created solely to reduce the number of appropriate units. We are simply not at liberty to disregard the meaning of the statute in order to more efficiently administer labor negotiations. While that may be a desirable end, it is for the Legislature to make that decision, and not for the courts.

We therefore hold that except for the county assessor, whose authority regarding the setting of wages has been transferred to the Sarpy County board, each of the other elected county officials is the appropriate person to represent the County of Sarpy in negotiating with the plaintiff labor union in connection with the specific employees in each of the respective offices, after it is determined that the plaintiff labor organization represents the particular employee unit in each office. If this is not a desirable result, it is for the Legislature to say otherwise.

REVERSED AND REMANDED WITH DIRECTIONS.

SHANAHAN, J., concurs in the result.

BOSLAUGH, J., dissenting.

I concur in the holding that the County of Sarpy is the employer. In my opinion, however, the county board is the only body authorized to represent the county in the bargaining process. Neb. Rev. Stat. § 23-103 (Reissue 1983); *State ex rel. Johnson v. County of Gage*, 154 Neb. 822, 49 N.W.2d 672 (1951). The county board is the final authority with respect to clerks and assistants to the county officers, subject only to the requirement that the board not exercise its authority arbitrarily. *Meyer v. Colin*, 204 Neb. 96, 281 N.W.2d 737 (1979).

Undue fragmentation is a consideration in determining what is an appropriate bargaining unit. This principle should not be disregarded in resolving the issue presented in this case.

GRANT, J., joins in this dissent.